## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| KIRK STICKLEY and MARY STICKLEY, Individually and on behalf of the ESTATE OF E.R.S., a deceased minor, § § § § § § § § *Plaintiffs*, § § **vs.** § § DOREL JUVENILE GROUP, INC., a § foreign corporation, and DOREL § INDUSTRIES, INC., a foreign § corporation § § *Defendants*. § | CIVIL ACTION NO. 1:21-cv-768<br><br>**JURY DEMANDED** |

## PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW, KIRK STICKLEY, and MARY STICKLEY, Individually and on behalf of the ESTATE OF E.R.S., a deceased minor, complaining of DOREL JUVENILE GROUP, INC., a foreign corporation, and DOREL INDUSTRIES, INC., a foreign corporation, and would respectfully show the Court as follows:

### Parties, Jurisdiction and Venue

1. This Court has jurisdiction over this matter under 28 U.S.C. §1332(a)(l) because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) and because there is complete diversity of the parties.

2. Plaintiffs, KIRK STICKLEY and MARY STICKLEY, are the biological parents of E.R.S., a deceased minor.

3. Plaintiff MARY STICKLEY is an individual residing in Liberty Hill, Williamson County, Texas. At all times relevant to this lawsuit, she was a resident of Liberty Hill, Williamson County, Texas where she resided with her minor daughter, E.R.S. She asserts her individual claims, including her claim for the wrongful death of E.R.S., and her claims on behalf of the Estate of E.R.S.

4. Plaintiff KIRK STICKLEY is an individual residing in Liberty Hill, Williamson County, Texas. At all times relevant to this lawsuit, he was a resident of Liberty Hill, Williamson County, Texas where he resided with his minor daughter, E.R.S. He asserts his individual claims, including his claim for the wrongful death of E.R.S., and his claims on behalf of the Estate of E.R.S.

5. Defendant, DOREL JUVENILE GROUP, INC. is a Massachusetts corporation with its principal place of business in Indiana at 2525 State St., Columbus, Indiana 47201-7494. Service of process on this Defendant can be completed by serving its registered agent, Christine Eineman Christian at 2525 State Street, Columbus, Indiana, 47201, via certified mail return receipt requested.

6. Defendant DOREL INDUSTRIES, INC. is a Canadian corporation with a principal place of business at 1255 Greene Ave., Suite 300, Montreal, Quebec Canada H3Z 2A4. DOREL INDUSTRIES, INC. can be served via Article 10(a) of the Hague Service Convention.

7. DOREL INDUSTRIES, INC. is the corporate parent of DOREL JUVENILE GROUP, INC. DOREL JUVENILE GROUP, INC. is the wholly owned subsidiary of

DOREL INDUSTRIES, INC. DOREL INDUSTRIES, INC. is a global organization, operating three segments: Dorel Home, Dorel Juvenile and Dorel Sports. DOREL INDUSTRIES, INC. employs approximately 8,200 people and operates in 25 countries.

8. DOREL INDUSTRIES, INC. is subject to jurisdiction under the doctrine of alter ego because DOREL JUVENILE GROUP, INC.'s contacts are imputed to DOREL INDUSTRIES, INC. for purposes of personal jurisdiction under Texas law. DOREL INDUSTRIES, INC. owns 100% of the stock of DOREL JUVENILE GROUP, INC. DOREL INDUSTRIES, INC. controls the internal business operations and affairs of DOREL JUVENILE GROUP, INC. As indicated in DOREL INDUSTRIES, INC.'S 2021 Annual Information Form, senior management of DOREL INDUSTRIES, INC. "coordinates the businesses of all three segments and maximizes cross-selling, cross-marketing, procurement, and other complementary business opportunities." DOREL JUVENILE GROUP, INC. is one subsidiary that comprises the DOREL INDUSTRIES, INC. "juvenile segment" and is fully controlled by DOREL INDUSTRIES, INC. Further, DOREL INDUSTRIES, INC. conducts regular meetings to coordinate and control the operations of DOREL JUVILE GROUP, INC. Additionally, DOREL INDUSTRIES, INC. instructs DOREL JUVENILE GROUP, INC. regarding the design and manufacturing of car seats that DOREL INDUSTRIES, INC. sells. Moreover, DOREL INDUSTRIES, INC. procures insurance, both liability and property, for DOREL JUVENILE GROUP, INC. Further, members of the Board of DOREL INDUSTRIES, INC. also serve on the Board of DOREL JUVENILE GROUP, INC. DOREL INDUSTRIES, INC. exercises control over

DOREL JUVENILE GROUP, INC. to a degree that exceeds the control normally exercised by a parent corporation. Thus, the corporate structure between DOREL INDUSTRIES, INC. is such that DOREL INDUSTRIES, INC. has excessive and actual control of DOREL JUVENILE GROUP, INC. and the contacts of DOREL JUVENILE GROUP, INC. are imputed to DOREL INDUSTRIES, INC.

9.  Defendants DOREL JUVENILE GROUP, INC. and DOREL INDUSTRIES, INC. (collectively "DOREL") submitted themselves to the jurisdiction of this Honorable Court by doing personally, or through their agents, at all times material to this action, the following acts:

(a) Committing a tortious act within this state by selling and delivering a defectively marketed car seat for use in the State of Texas;

(b) Conducting or engaging in substantial business and other activities in Texas by manufacturing, developing, marketing and/or assembling car seats and/or component parts, including the subject car seat, to persons, firms or corporations in this state. Such car seats were used by consumers in Texas in the ordinary course of commerce and trade;

(c) At or about the time of E.R.S.'s accident, Defendants engaged in solicitation activities in the State of Texas to promote the sale, consumption, use and maintenance of their Grow and Go car seats; and

(d) Manufacturing, testing, delivering and/or selling the subject Grow and Go Car Seat and its component parts with knowledge or reason to foresee that it would

be shipped in interstate commerce and would reach the market of Texas users or consumers.

10. Venue is proper in this judicial district under 28 U.S.C. §1391 (a)(2) because it is the District in which all or a substantial part of the events or omissions giving rise to the claim occurred and/or where the property at issue is situated.

11. Further, under 28 U.S.C. § 1391(a)(1) & (2) Defendants are subject to personal jurisdiction in this district and are therefore both a "resident" of this district. Defendants manufacture or market goods that are targeted for sale and distribution within the State of Texas and maintain minimum contacts with Texas by purposefully availing themselves of the benefit of doing business in the State of Texas.

## Factual Background

12. E.R.S. was born on March 26, 2018. Her biological parents are KIRK STICKLEY and MARY STICKLEY.

13. Mr. KIRK STICKLEY and Ms. MARY STICKLEY purchased a DOREL Safety 1st Grow and Go Model # CC138EFL convertible car seat for use with their daughter E.R.S. before the subject occurrence. The car seat was manufactured on February 17, 2017. The seat was designated for use as a rear-facing infant seat for children up to 40 pounds and designated for use as a forward facing-infant seat for children 22-65 pounds.

14. On September 1, 2019, STEPHEN KENT NEIL was driving a 2017 Honda CRV southbound on US Highway 281 at about 5:20 p.m. in Round Mountain, Texas when he allegedly hydroplaned through standing water. STEPHEN KENT NEIL's vehicle then

crossed into the northbound traffic and struck a 2012 Ford Explorer driven by KIRK STICKLEY. MARY STICKLEY occupied the right front passenger seat in the 2012 Ford Explorer at the time of the collision. E.R.S. was seated behind her parents in the 2012 Ford Explorer, secured in a DOREL Safety 1st "Grow and Go" child restraint system in the second-row center in a forward-facing position. While her parents, KIRK STICKLEY and MARY STICKLEY, sustained minor, non-incapacitating injuries in the accident and were briefly treated and released, E.R.S. was tragically killed. At the time of the subject collision, she was one year and five months old.

15. DOREL is the largest car seat manufacturer in the world. Long before the incident in question, DOREL concluded, based on published studies, knowledge of the pediatric skeletal structure, toddlers' risk of injury, and their own internal documents, that toddlers younger than four years of age were much safer in the rear-facing orientation than a forward-facing orientation. Long before this collision, DOREL knew that 70% of all crashes are frontal collisions. DOREL has known for years that placing a child, such as E.R.S., in a forward-facing orientation at her age subjects toddlers like her to serious risk of injury due to the tender and undeveloped nature of their spines, particularly given the relatively large size of their heads. In a frontal crash such as this, if a toddler is facing forward in a child seat, their torso will be restrained but their head will move forward rapidly, exposing them to potential spinal cord injury. The research, analyzed and accepted by DOREL, overwhelmingly shows a child in a severe frontal collision needs to be facing the rear, because if she is, the seatback cushions or cocoons her blow as she moves forward and keeps her head, neck and back aligned. DOREL has conducted extensive research showing

children are much safer if they were in rear-facing car seats.

16. TERRY EMERSON was the Director of Quality Assurance at DOREL at the time the subject car seat was manufactured. TERRY EMERSON held that position at DOREL since August of 1976. At all times prior to this collision, Mr. Emerson ran the entire test facility for DOREL car seats. In February of 2010, over nine years before the incident in this lawsuit, TERRY EMERSON wrote to his daughter warning her not to put her 14-month-old son, and his grandson, in a forward-facing car seat stating, "father knows best" and encouraged her to place her child rear facing to lessen the risk of a spinal cord injury.

17. In 2011, eight years before this accident, the American Academy of Pediatrics issued a guideline stating you cannot have a child facing forward before the age of two. DOREL announced they agreed with this guideline shortly after it was issued. However, when it came time to warn parents shopping for car seats, DOREL made a busines decision not to warn parents of the safety danger by placing their toddler forward-facing.

18. DOREL refused to warn parents in the United States that their toddlers were at increased risk for spinal cord injuries if they were placed in a car seat facing forward. All the while, DOREL in Europe was warning parents that the safest position for their toddler was to be placed in a rear-facing car seat. DOREL INDUSTRIES, INC. negligently failed to control the warnings it was providing to parents around the globe to ensure that children were placed in the safest position.

19. Further, DOREL's internal documents show they knew well before this accident that: (a) rear-facing car seats for toddlers are safer because they support the head, neck and spine

throughout a crash event; and (b) children under 2 are biomechanically safer when they ride rear-facing than forward-facing. Despite this knowledge and knowing their paid statistician could not discredit prior studies, Dorel failed to warn parents of the enhanced dangers and continued to sell unsafe car seats such as the seat at issue.

20. E.R.S.'s parents followed the instructions in placing her forward-facing in the subject seat. E.R.S. was well within the age, height, and weight instructions to ride either forward facing or rearward facing in the subject seat. DOREL provided no warning or instruction that rear-facing was the safest position or that E.R.S. was at greater risk of spinal cord injury if she was facing forward. As a result, E.R.S., just a year and five months old, suffered the exact injury a rear-facing car seat would have prevented and lost her life. DOREL's negligent acts and omissions alleged herein were a proximate cause of the incident made the basis of this lawsuit and Plaintiffs' injuries and damages.

## Causes of Action

### Negligence Cause of Action Against DOREL

21. Plaintiffs adopt and re-allege each paragraph set forth above as if fully set forth herein.

22. DOREL was negligent for failing to adequately warn United States parents and users of the subject child seat that a young child would be exposed to greater risk of spinal cord injury if they are facing forward and failing to instruct parents to keep their child rear facing as long as possible because it would increase the safety of the child. DOREL was also negligent in the design of the warnings, instructions, and sticker warnings that accompanied and were affixed

to the subject child seat.

23. DOREL's negligent acts and omissions alleged herein were a proximate cause of the incident made the basis of this lawsuit and Plaintiffs' injuries and damages.

### **Marketing Defect/Failure to Warn Against DOREL**

24. Plaintiffs adopt and re-allege each paragraph set forth above as if fully set forth herein.

25. The subject car seat was defectively marketed because DOREL knew or should have known of a potential risk of enhanced and serious injury to young children resulting from being positioned forward facing in the subject car seat but marketed the car seat without any adequate warning of the danger or providing any instructions for its safe use given this enhanced risk of injury. The risk of harm associated with the subject car seat arises from its intended or reasonably anticipated use. DOREL actually knew or could have reasonably foreseen the risk of harm at the time the car seat was marketed and sold, and the absence of any adequate warnings or instructions rendered the car seat unreasonably dangerous to the Plaintiffs' family.

26. The marketing defect(s) in the subject car seat was a producing cause of the damages alleged herein.

### **Design Defect Against DOREL**

27. Plaintiffs adopt and re-allege each paragraph set forth above as if fully set forth herein.

28. DOREL designed the child safety seat involved in the subject accident.

29. It was entirely foreseeable to and well-known by DOREL that accidents and incidents involving the subject car seat, such as occurred herein, would on occasion take place during normal and ordinary use.

30. DOREL's subject car seat was not reasonably crashworthy, was unreasonably dangerous and was defective because it resulted in serious bodily injury to toddlers under the age of two.

31. There were safer alternative designs for the subject car seat that were technologically and economically feasible which would have significantly reduced the likelihood of the subject occurrence and E.R.S.'s untimely death.

32. The defective car seat alleged herein was a producing cause of Plaintiffs' damages.

### Gross Negligence Cause of Action Against DOREL

33. Plaintiffs adopt and re-allege each paragraph set forth above as if fully set forth herein.

34. DOREL's conduct complained of above constitutes gross negligence. DOREL's conduct, when viewed objectively from the standpoint of the actor at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, DOREL, by and through its employees and agents, had actual, subjective awareness of the risk but proceeded with conscious indifference to the rights, safety, or welfare of others.

### Wrongful Death Damage Claims

35. Plaintiffs adopt each paragraph set forth above as if fully set forth herein.

36. Plaintiffs, KIRK STICKLEY and MARY STICKLEY are Texas statutory wrongful death beneficiaries of E.R.S., deceased. Defendants are corporations.

37. DOREL's wrongful acts and/or omissions, including the defectively designed, marketed and manufactured product, caused the death of E.R.S.

38. E.R.S., deceased, would have been entitled to bring an action for injury had she lived.

39. Plaintiffs have each suffered an actual injury.

40. Plaintiffs have suffered pecuniary loss in the past and will suffer pecuniary loss in the future. Plaintiffs have suffered loss of love, companionship, society, and affection in the past and will suffer this loss in the future.

41. Plaintiffs have suffered mental anguish and loss of companionship and society in the past and will suffer such damages in the future.

42. Plaintiffs adopt and claim entitlement to exemplary damages as set forth previously herein

43. DOREL's wrongful conduct complained of herein was a proximate and/or producing cause of Plaintiffs' damages.

### Survival Damage Claim – E.R.S.

44. Plaintiffs adopt each paragraph above as if fully set forth herein.

45. Plaintiffs KIRK STICKLEY and MARY STICKLEY are heirs of the Estate of E.R.S., and no administration of the Estate has taken place, and none is necessary. As such, KIRK STICKLEY and MARY STICKLEY are the legal representatives of the Estate of E.R.S.

46. E.R.S., deceased, had a legal cause of action for personal injury before she died.

47. E.R.S., deceased, would have been entitled to bring an action for injury if she had lived.

48. DOREL's wrongful conduct and defectively designed, marketed and manufactured product(s) alleged herein caused E.R.S.'s injuries.

49. Prior to her death, E.R.S. suffered conscious pain, suffering, and mental anguish.

50. E.R.S. incurred medical expenses associated with her injury and funeral and burial expenses associated with her death.

51. E.R.S.'s Estate adopts and claims entitlement to exemplary damages as set forth previously herein.

52. DOREL's wrongful acts and/or omissions, including the defectively designed, marketed and manufactured product(s), complained of herein were a proximate and/or producing cause of E.R.S.'s injuries.

### **Bystander Claims (Kirk Stickley)**

53. At the time of the incident made the basis of this lawsuit, Plaintiff KIRK STICKLEY was the father of E.R.S. Plaintiff was therefore, closely related to the victim of the incident in question.

54. KIRK STICKLEY was a bystander to the occurrence in that he was in the vehicle and witnessed his daughter E.R.S. and her injuries after the accident.

55. KIRK STICKLEY had a sufficiently contemporaneous perception of the injuries of E.R.S. to entitle him to damages as a bystander for his severe mental anguish.

56. By reason of all of the above, Plaintiff has suffered losses and damages in a sum within the jurisdictional limits of the Court and for which this lawsuit is brought.

### **Bystander Claims (Mary Stickley)**

57. At the time of the incident made the basis of this lawsuit, Plaintiff MARY STICKLEY was the mother of E.R.S. Plaintiff was therefore, closely related to the victim of the incident in question.

58. MARY STICKLEY was a bystander to the occurrence in that she was in the vehicle and witnessed her daughter E.R.S. and her injuries after the accident.

59. MARY STICKLEY had a sufficiently contemporaneous perception of the injuries of E.R.S. to entitle her to damages as a bystander for her severe mental anguish.

60. By reason of all of the above, Plaintiffs have suffered losses and damages in a sum within the jurisdictional limits of the Court and for which this lawsuit is brought.

## **Contributory Negligence**

61.     Plaintiffs would show that nothing that they did, or failed to do, in any way contributed to this collision.

## **Damages**

62.     The elements of damages which Plaintiffs seek to recover from the Defendants include compensation for the following:

a.  Plaintiffs, KIRK STICKLEY and MARY STICKLEY, are Texas statutory wrongful death beneficiaries of E.R.S., deceased. Plaintiffs seek all wrongful death damages recoverable under Tex. Civ. Prac. & Rem. Code §§ 71.001-71.051, including, but not limited to, pecuniary loss in the past and pecuniary loss in the future, the loss of love, companionship, society, and affection in the past and in the future, and mental anguish in the past and future;

b.  Survival damages on behalf of the ESTATE OF E.R.S.;

c.  Mental anguish and suffering sustained by Plaintiffs from date of injury to time of trial including the bystander claim of Plaintiffs;

d.  Mental anguish and suffering which is reasonably anticipated to be suffered by Plaintiffs in the future including the bystander claims of Plaintiffs;

e.  Reasonable and necessary medical expenses incurred by Plaintiffs in the from date of injury to time of trial;

f.  Reasonable and necessary medical expenses reasonably anticipated to be sustained by Plaintiffs in the future;

g.  Exemplary damages;

h.  Funeral and burial costs; and

i.  The maximum allowable pre-judgment and post-judgment interest on any damages they may be awarded and pray to recover all court costs associated with this action.

## Jury Demand

63. Plaintiffs specifically request a trial by jury of the matters herein.

## Prayer

WHEREFORE, the Plaintiffs, KIRK STICKLEY and MARY STICKLEY, individually and on behalf of ESTATE OF E.R.S., a deceased minor, demand judgment against Defendants, DOREL JUVENILE GROUP, INC. and DOREL INDUSTRIES, INC., for compensatory and exemplary damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

**HOSSLEY & EMBRY, LLP**

By: */s/ Jeffrey T. Embry*
Jeffrey T. Embry
State Bar No. 24002052
jeff@hossleyembry.com
Christopher P. Peirce
State Bar. No. 24046604
cpeirce@hossleyembry.com
515 S. Vine Ave.
Tyler, Texas 75702
(903) 526-1772
(903) 526-1773 (fax)
**ATTORNEYS FOR PLAINTIFFS
KIRK AND MARY STICKLEY,
INDIVIDUALLY, AND ON BEHALF OF
THE ESTATE OF E.R.S.**