IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KIRK STICKLEY and MARY STICKLEY, Individually and on behalf of the ESTATE OF E.R.S., a deceased minor, § § § § | |
| *Plaintiffs*, § | CIVIL ACTION NO. 1:21-cv-768-JRN |
| § | |
| vs. § | |
| § | **JURY DEMANDED** |
| DOREL JUVENILE GROUP, INC., a foreign corporation, and DOREL INDUSTRIES, INC., a foreign corporation § § § § | |
| *Defendants*. § | |

**PLAINTIFFS' RESPONSE TO DOREL JUVENILE
GROUP, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Stickley files this Response to Dorel's Motion for Partial Summary Judgment (Dkt. 44). In support of this Response, Stickley would respectfully show the Court the following:

**BACKGROUND**

This is a products liability case involving the warnings and instructions which accompanied a child's car seat. Dorel designed, manufactured, and marketed the seat under its "Safety 1st" brand name as the "Safety 1st Grow and Go." The Stickleys purchased the seat for E.R., which was a "convertible" car seat, meaning it could be used in a forward-facing or rear-facing configuration. The owner's manual stated the forward-facing position is appropriate for children between 22 and 65 pounds and at least one year old. Nowhere on the seat itself or in its manual is there any mention of any safety issue presented to a child's neck or head by facing forward versus rearward.

Stickley diligently read the warnings and instructions accompanying the seat. At the time of the accident, E.R. was well over the height, weight and age requirements to face forward, yet was also well within the seat's guidelines to ride rear facing for much longer. Thus, with no

1

warnings or information to suggest any safety risk posed to E.R., and consistent with Dorel's instructions, Stickley turned her forward facing. Stickley did not know there was any threat to E.R.'s neck or spinal cord involved in this decision. On September 1, 2019, E.R. was facing forward in the Grow and Go, she was in a frontal collision, and her head flung forward violently, and she suffered a spinal cord injury and tragically passed away.

What Stickley did not know at the time of the accident is that the seat was dangerous for a child similar to E.R., who was a 17 months old at the time of the accident, in the forward-facing orientation. In fact, long before the incident in question, Dorel concluded young children should not be placed forward facing in car seats because it subjects them to serious risks of injury due to the tender and undeveloped nature of their spines, particularly given the relatively large size of their heads. In a frontal crash such as this, if a toddler is facing forward in a child seat, her torso will be restrained, but her head will move forward rapidly, exposing her to spinal cord injury. The research, analyzed and accepted by Dorel, overwhelmingly shows a child in a severe frontal collision needs to be facing the rear, because if she is, the seatback cushions or cocoons her blow as she moves forward and keeps her head, neck, and back aligned.

Dorel fully acknowledges this danger and even warns its customers in Europe of the severe risk of neck and head injuries to a young child in frontal collisions. In the United States, Dorel now tells the public about the risk but continues to argue against it in this lawsuit. Dorel has also recommended children remain in a rear-facing seat as long as possible due to the danger of injury to their fragile necks and heads in frontal collisions—which comprise 70% of all collisions. Terry Emerson was the Director of Quality Assurance at Dorel for nearly fifty years and ran all of Dorel's testing. In February 2010, over nine years before the incident in this lawsuit, Mr. Emerson wrote to his daughter warning her not to put her fourteen-month-old son—Mr. Emerson's grandson—in

a forward-facing car seat, stating, "Father knows best." The article Mr. Emerson sent his daughter warns about the toddler's fragile neck and head and why a rear facing car seat was best.

Shockingly, when it came time to warn parents shopping for car seats in the United States, like the subject Grow and Go, Dorel made a deliberate business decision not to warn parents of the increased risk of spinal cord injuries to young toddlers. Further, despite Dorel's acceptance of the recommendation to keep children in the rear-facing mode of a car seat as long as possible, and at least up to the rear-facing height and weight limit of the particular seat, Dorel inexplicably made a business decision not to do this for the subject seat. Dorel tries to champion a message of unequivocal compliance with all government standards and recommendations. Yet, Dorel failed to do this for the subject seat. Specifically, Dorel failed to warn or instruct consumers the National Highway Traffic Safety Administration ("NHTSA") and the American Academy of Pediatrics ("AAP") recommended then, and still recommend today, children ride rear facing for as long as possible and up to the height and weight limit of the seat. Also, FMVSS 213 does govern the relative safety of rear-facing versus forward facing and Dorel is not entitled to any presumption of non-liability.[1] Further, even if it did, Dorel failed to plead Tex. Civ. Prac. & Rem. Code § 82.008 and therefore waived any such defense.

Not only did Dorel not warn parents of the danger at issue—it also gave express instructions E.R. could be forward facing based on her height and weight. As a result, E.R., who was forward facing on the date of the accident, suffered the exact injury a rear-facing car seat is designed to prevent and lost her life.

Dorel was grossly negligent in continuing to package and sell convertible car seats for use with toddlers without adequately warning them of the severe risks associated with a spinal cord

---

[1] *See* Order of Chief Judge Rodney Gilstrap, pp. 2-5, **Exhibit 53.**

injury in the forward-facing position. Had E.R. been placed in the rear-facing position, her head and spine would have been pocketed into the seat back during the subject frontal collision, and she would not have suffered serious injuries. Ample evidence demonstrates Dorel knew of this risk and warnings it should have provided consumers regarding enhanced the risk injury to the neck and head in placing a toddler forward-facing versus rear-facing. There is also evidence of E.R.'s conscious pain and suffering warranting denial of Dorel's motion on those grounds.

## ARGUMENT AND AUTHORITIES

### I. LEGAL STANDARD

To prevail on their "gross negligence" claim, the Stickleys need only show that:

(1) Dorel's conduct, when viewed objectively from its standpoint at the time, involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and,

(2) Dorel had actual, subjective awareness of the risk involved, yet proceeded with conscious indifference to the rights, safety, or welfare of others.[2]

Summary judgment is governed by Fed. R. Civ. P. 56(a). Summary judgment is proper if the movant, Dorel, shows that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.[3] In order to show that summary judgment is not proper, the non-movant (Plaintiffs) must show that there are genuine issues of material fact. Dorel's materials alone demonstrate genuine issues of material fact.[4]

### II. AMPLE EVIDENCE TO SUPPORT EXEMPLARY DAMAGES

#### A. Dorel's Testimony in this Case

Dorel admitted there was <u>nothing</u> in the subject seat's box art, manual, stickers where Dorel conveyed to parents a fair indication of the nature and extent of the danger to their child if they

---

[2] Tex. Civ. Prac. & Rem. Code §41.001(11).
[3] *See* FED. R. CIV. P. 56(a); *see also Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).
[4] *See* FED. R. CIV. P. 56(c)(1)(B).

face that child forward after age one instead of rearward. Dorel agreed it did not give parents <u>any</u> fair indication of the nature and extent of any danger to a child turning them around forward facing between age one and two that their fragile neck and disproportionately large head can expose them to a spinal cord injury.[5] Stickley would have kept E.R. rear facing had they known.[6]

Dorel admitted knowing children are the same around the world.[7] Dorel admitted knowing car seats in a rear facing mode spread the forces across the whole back.[8] Dorel admitted knowing close to 70% of accidents are frontal collisions.[9] Dorel admitted knowing it is safest for children to travel rear facing until their muscles and bones are properly developed.[10] Dorel knows it is safer to transport the child rear facing as in an accident the forces of the impact are spread over its entire body. Dorel knows if you transport your young child in forward facing child seat it would have severe consequences in a forward accident. Dorel knows the forces of an accident cause the head to be thrown forward and all of the force concentrated in the neck and for young children this would have very bad consequences.[11] Dorel admitted it is not aware of any medical literature or studies that support the idea that a child is equally safe over at age one but younger than two in a frontal collision as they would be facing in the rear.[12]

### B. Evidence Admitted by Dorel of the Awareness of the Risk

In previously denying Dorel's Motion for Summary Judgment on Punitive Damages on this same issue, Chief Judge of the Eastern District of Texas, Rodney Gilstrap's Opinion unequivocally states there was specific and sufficient evidence such that a jury could find by clear

---

[5] *See id.* pp. 40-41
[6] *See* Deposition testimony of Kirk Stickley, **Exhibit 57**.
[7] *See* Deposition of Darrin Keiser, p. 19, **Exhibit 1**.
[8] *See id*. p. 24.
[9] *See id*. p. 24-25.
[10] *See id.* p. 25.
[11] *See id.* pp. 32-33.
[12] *See id.* pp. 38-39

5

and convincing evidence Dorel was grossly negligent.[13] The jury later did make that determination. The same evidence (and more) is cited here.

Dorel has known for years 70 percent of all crashes are frontal collisions and that most collisions have a frontal component.[14] Dorel knew toddlers have disproportionately large heads in comparison to the rest of their body.[15] Dorel knew if facing forward in a child seat, while the toddler's torso may be restrained by the child seat's harness, the toddler's head is unrestrained and continues to whip forward until it is restrained by the toddler's neck.[16] Dorel knew toddlers in frontal collisions are at increased risk for neck and spinal cord injuries.[17] Dorel knew NHTSA and the AAP both recommend keeping a child rear-facing as long as possible and have done so consecutively since 2011.[18]

Dorel's testimony and documents demonstrate Dorel knew of the grave risk and did not warn. Bill Forbes, Dorel's Executive Vice President of Research and Development, testified since the beginning of his career in the car seat industry (more than 14 years), there were discussions "around the desire to keep children rear facing longer" for their safety.[19] Dorel concurred with keeping a child rear facing until age four in 2009.[20] Dorel testified the AAP advised in 2011 infants younger than two have relatively large heads and several structural features of their necks and

---

[13] *See* Chief Judge Gilstrap's Order, pp. 6-9, **Exhibit 53**.
[14] *See* excerpts from the deposition of Ryan Hawker, p. 75 ln 6-9, **Exhibit 17**; *see also* excerpts from deposition of Terry Emerson at pp. 45, ln. 18 – pp. 46, ln. 2., **Exhibit 18**; *see also* Dorel Maxi Cosi publication, **Exhibit 13**. *See* also Maxi Cosi car seat rules, **Exhibit 45.**
[15] *See* Dorel Buying Guide p. 3 of 9, **Exhibit 7**; *see also* excerpts from deposition of Terry Emerson at p. 18, ln. 10 – 23, **Exhibit 18**.
[16] Dorel's Cosco brand website Frequently Asked Questions - Why Do Babies Need to Travel Facing the Rear, **Exhibit 10**; Dorel's Maxi-Cosi brand website excerpt (explaining the risk to children facing forwards in a frontal collision), **Exhibit 11**; Dorel's Cosco brand website explaining the risk to children's necks posed by facing forward, **Exhibit 12**; Dorel's Maxi-Cosi Brand Statement Concerning Rear Facing Safety, **Exhibit 16**.
[17] *See* Dorel test showing the motion of a child's head and neck if forward-facing in a frontal collision, **Exhibit 5**.
[18] NHTSA Child Seat Recommendations. **Exhibit 38**.
[19] *See* excerpts from the deposition of Bill Forbes, pp. 5, ln. 10 – pp. 7, ln. 3; *see also* pp. 8, ln. 22 –pp. 9, ln. 22, **Exhibit 20**.
[20] *See* excerpts from the deposition of Richard Glover, p. 110, ln. 24 – p. 111, ln. 8, **Exhibit 21**.

spines placing them at particularly high risk of head and spine injuries in crashes, rear facing child seats provide optimal support to the head and spine in the event of a crash, and evidence indicates this benefit extends to children up to two years of age.[21] Dorel knew the vertebrae of a child is not solid bone yet, the spine can shift greater than the spinal cord can tolerate and the purpose of the car seat being in a rear-facing orientation for toddlers is to provide support for their head, neck, and spine in the event of a frontal collision.[22] Dorel has long known when a child is rear-facing, their head, neck and spine are better supported and in the event of an accident, crash forces are distributed over the child's entire body.[23] Dorel did not base these assertions solely on the work of others. In one publication, Dorel noted that:

> As demonstrated by DJG's advanced testing methods, it is proven that crash forces are distributed over the entire body of a child while riding rear facing, further protecting their head, neck and spine in the case of an accident.[24]

Additionally, a Dorel executive described how the entire back surface of the car seat distributes the loads for a child that is rear-facing in a frontal collision.[25] Dorel testified a baby's neck bones "for sure" become fully ossified *after* 1 years of age.[26] Dorel testified it was aware toddlers were at risk of spinal cord injuries in frontal collisions by virtue of their head whipping forward.[27] Dorel was instrumental in passing legislation in Europe beginning in 2013 to advocate riding rear facing as long as possible. Dorel advised consumers in Europe, "travelling rear-facing will protect your baby's delicate neck and head by spreading the forces of the impact if there is a head-on collision."[28] Dorel told consumers in Europe that children travelling forward-facing can

---

[21] *See* excerpts from the deposition of Richard Glover, p. 174, ln. 21 – p. 176, ln. 21, **Exhibit 21**.
[22] *See id.* pp. 51, ln. 5 –pp. 52, ln. 14, **Exhibit 21**.
[23] *See* excerpts from Dorel Safety 1st Webpage, **Exhibit 22**; see also excerpts from deposition of Richard Glover at pp. 150, ln. 8 –pp. 151, ln. 24, **Exhibit 21**.
[24] *See* Dorel internal email on April 18, 2011, **Exhibit 23**. Dorel Press Statement. **Exhibit 36**.
[25] *See also* excerpts from deposition of Terry Emerson at pp. 45, ln. 10-23., **Exhibit 18**.
[26] *See* excerpts from the deposition of Ryan Hawker, p. 62 ln 10-12, **Exhibit 17**.
[27] *See id.* p. 71 ln 22 through p. 72 ln. 4, **Exhibit 17**.
[28] *See* Dorel Max-Cosi FAQs in Europe, **Exhibit 11**.

be thrown forwards in a head-on collision and that puts stress on the fragile head and neck, which can lead to serious injury.[29] Dorel, in its Frequently Asked Questions response provided via its website that, "[A] rear-facing car seat supports the entire head, neck, and back in most crashes. The restraint cradles and moves with the child, reducing stress to the neck and spinal cord."[30] In Europe, Dorel told consumers why it is safer to transport a toddler rearward facing instead of forward facing by stating "the neck of the child matures with age, and not when it reaches a certain stature or mass. When travelling rearward facing, the forces of a frontal collision are better spread over a greater area of the body of the baby, which leads to less pressure on the head and neck."[31] Dorel knew, unquestionably, regarding these risks and knew how to describe the risk if they wished. In fact, in 2011 Dorel issued a statement "[a]s demonstrated by DJG's advanced testing methods, it is proven that crash forces are distributed over the entire body of a child while riding rear facing further protecting their head, neck and spine in the case of an accident."[32]

Given the ample amount of evidence in the record of Dorel's gross negligence and the briefing limitation, Stickley refers to the record for more overwhelming evidence of Dorel's gross negligence mandating the denial of its summary judgment on gross negligence.[33]

### C. False Claims "Things Changed"

Dorel claims "things changed" regarding the necessity of warning parents of a risk of spinal cord injury riding forward facing in 2016 when it paid a statistician in litigation, Jeya Padmanaban, to try to say children were safer forward facing when Dorel was confronted with a lawsuit Dorel's warnings were defective. The lawsuit, called *Hinson v. Dorel*, was tried in the United States

---

[29] *See* Dorel Maxi-Cost Car Seat Rules, **Exhibit 16**.
[30] *See* Dorel Juvenile website, FAQ response, **Exhibit 2**.
[31] *See* Dorel FAQ's about i-Size- Maxi-Cosi, **Exhibit 30**.
[32] *See* Dorel March 22, 2011 Statement, **Exhibit 3**.
[33] *See generally* **Exhibits 1-57**.

District Court for the Eastern District Texas, Marshall Division. First, Jeya Padmanaban testified in that case from a statistical evaluation, she could not say that children were safer forward facing.[34] Further, Padmanaban's opinion was not based on any proper sample or peer review and her opinions in this regard have been systematically rejected for publication.[35] She has never had her litigation opinion forward facing seats are as safe or safer accepted by any publication despite multiple attempts.[36] The jury in *Hinson* found Dorel's warnings, regarding the risk of spinal cord injury of facing forward, defective and found Dorel grossly negligent.[37] The date of that verdict was June 17, 2016, further underscoring Dorel's awareness of the risk.

Dorel also claims "things changed" weeks before this car seat was manufactured when Dorel performed internal testing, not shared with the public, using a steel blocker plate in front of a rear facing seat, not consistent with an actual car seat structure, and then took head and neck measurements of a pediatric dummy with non-biofidelic features. Dorel points to that "test" for the dubious claim forward facing seats may be as safer or safer than rear facing seats. Further, the shell used in the tests was a CC118. According to Dorel, that shell is <u>not</u> significantly similar to the subject shell cc138.[38] Dorel has also failed to produce ten missing videos from the tests and all of the summary sheets for the NCAP speed tests. Additionally, Dorel first removed the two-year mandate to ride forward facing on its seats in August of 2016. The "tests" took place in late January of 2017. Thus, these "tests" were not used to decide what was safest or safest for this seat, they were generated to assist in a business decision that had already been made.

Yet, Dorel, through its experts in this case and others, are claiming those same two things

---

[34] *See* Deposition testimony of Jeya Padmanaban, p. 91 and 93, **Exhibit 27**.
[35] *See* Deposition testimony of Jeya Padmanaban, p. 10-11, **Exhibit 51**.
[36] *See id.* Further, the Henary study was not retracted until 10 months after car seat made (**Exhibit 25**).
[37] *See* Hinson Verdict, **Exhibit 39.**
[38] *See* Dorel's Responses to Requests for Production, Prefatory Statement, **Exhibit 52**.

are the basis for contending the "consensus" changed and there still no consensus as of today. In other words, Dorel's experts still rely on those two things today and claim to have been relying on them since 2016. No new study or decision has impacted that analysis. If that is true, and "things changed" in 2016, then Dorel cannot explain why they have been telling the American public the following since at least 2022:

> The policy statement from the American Academy of Pediatrics includes the following recommendations for optimal safety: All infants and toddlers should ride in a rear-facing car seat as long as possible until they reach the highest weight/height by the seat's manufacturer. **The reasoning behind extending the age requirement that used to be until one year old is that as scientists study travel safety for kids, they've determined that infants and toddlers are at a greater risk for head and spinal cord injuries if they're in a forward-facing car seat. During an accident, the car seat provides better support for their head and neck when in the rear-facing position.**[39]

If any doubt remains whether Dorel's safety messages to the American public are litigation driven rather than safety driven, Dorel modified the above web site message to the American public on February 3, 2023, <u>just 4 days after it was produced in this litigation by the Plaintiffs' expert</u>.[40] Further, the "things changed" argument also fails because it directly contradicts the testimony of Dorel in this case.[41] Additionally, Dorel possesses testimony from the President of the AAP telling them why children are much safer in a rear facing position and that position has never changed.[42] Thus, Dorel's litigation reasons for "things change" do not align with the industry, medical literature, Dorel's sworn testimony or even Dorel's own messaging to the American public. At a minimum, there is genuine issue of material fact precluding summary judgment.

### III. EVIDENCE OF CONSCIOUS PAIN AND SUFFERING

Dorel glaringly omits the deposition testimony of Dr. Mary Collier who took Baby E.R. at

---

[39] *See* website posting of Safety 1st/Dorel, **Exhibit 15** (emphasis added).
[40] Compare original message, **Exhibit 15** with message revised four days after being produced in litigation, **Exhibit 28** where safety message about why rear-facing is better is erased.
[41] *See* Deposition testimony of Darrin Keiser, *supra*, **Exhibit 1**.
[42] *See* Deposition testimony of Dr. Benjamin Hoffman, **Exhibit 19**, pp. 84-87.

the subject Ford Explorer right after the crash and performed CPR on her for several minutes long before medical responders arrived at the scene. Dr. Collier testified, "she was still breathing" and "her heart was still beating" and "everything was still there" as Dr. Collier got her out of the rain and get her warm.[43] Dr. Collier testified E.R. had a very strong pulse, bradycardic initially and then it was thready after that like a struggling child.[44] She also observed Baby E.R.'s eyes flutter.[45] Dr. Collier also testified E.R. reacted to her voice and hearing her name.[46] Dr. Collier testified E.R. ultimately took a breath, let it out and passed in her arms because there was no further pulse. Dr. Collier was continually checking E.R.'s pulse on multiple locations of her body the entire time she was with her. [47]Under Texas law, conscious pain and suffering may be inferred from proof that the deceased had severe injuries or may be established by circumstantial evidence.[48] Direct proof of such suffering is not necessary.[49] Accordingly, this evidence presents a genuine issue of material fact and Dorel's partial motion on this issue must be denied.

## CONCLUSION AND PRAYER

For the foregoing reasons, this Court should deny Dorel's Motion for Partial Summary Judgment.

Dated this 1st day of March, 2023.

---

[43] *See* Deposition of Dr. Mary Collier, pp. 21-26, 63-65, 72-76, **Exhibit 9**.
[44] *See id.*
[45] *See id.*
[46] *See id.*
[47] *See id.*
[48] *Ruiz v. Guerra*, 293 S.W.3d 706, 722 (Tex. App.—San Antonio 2009, no pet.); *Holcombe v. United States*, 584 F. Supp. 3d 225, 288 (W.D. Tex. 2022).
[49] *United Rentals N. Am., Inc. v. Evans,* 608 S.W.3d 449, 465 (Tex. App.—Dallas 2020, pet. granted).

11

Respectfully submitted,

*/s/ Jeffrey T. Embry*
Jeffrey T. Embry
State Bar No. 24002052
Attorney-in-Charge
Christopher Peirce
State Bar No. 24046604
HOSSLEY & EMBRY, L.L.P.
515 S. Vine Avenue
Tyler, Texas 75702
Phone:  903-526-1772
Fax:      903-526-1773
jeff@hossleyembry.com
cpeirce@hossleyembry.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a copy of this pleading has been served on all counsel of record via the Court's ECF system on this 1st day of March, 2023.

/s/ *Jeffrey T. Embry*
Jeffrey T. Embry

12